NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| DANA T. BRAUNSKILL, | : | CIV. NO. 18-14851 (RMB/AMD) |
| Plaintiff | : | |
| v. | : | **OPINION** |
| OFFICER JEFFREY ROBINSON, *et al.*, | : | |
| Defendants | : | |

**RENÈE MARIE BUMB, Chief United States District Judge**

On December 16, 2022, this Court held a bench trial on the sole issue of Plaintiff's exhaustion of administrative remedies of the excessive force claims in his *pro se* prisoner civil rights complaint, pursuant to 42 U.S.C. § 1997e(a). (Dkt. No. 89.) The Court did not find credible Plaintiff's testimony that he attempted to exhaust his administrative remedies but was prevented from doing so by prison staff's failure to respond. Thus, the Court granted Defendants' motion for summary judgment. (Dkt. No. 87.) The Court left the door open for Plaintiff to produce copies of letters that he discussed at the bench trial in support of his exhaustion argument. (Dkt. No. 89.)

This matter comes before the Court on Plaintiff's motion to reopen this matter and for reconsideration of the order granting Defendants' motion for summary judgment, and Plaintiff's three supplemental letters in support of his motion for

reconsideration. (Docket Nos. 88, 90, 91, 92.) Defendants did not file a responsive brief.

## I. PLAINTIFF'S MOTION FOR RECONSIDERATION

In his motion for reconsideration, Plaintiff states that he no longer has confidence in his counsel in this matter, and he wishes to proceed *pro se* with his motion for reconsideration. (Dkt. No. 88 at 2.) Although Plaintiff's counsel has not withdrawn, this matter was closed when the Court granted Defendant's motion for summary judgment. The Court will permit Plaintiff to proceed *pro se* with his motion for reconsideration.

In his brief in support of reconsideration, Plaintiff quotes *Shifflet v. Korszniak*, 934 F.3d 356, 359 (3d Cir. 2019), "a prisoner exhausts his administrative remedies as soon as the prison fails to respond to a properly submitted grievance in a timely fashion." (Dkt. No. 88 at 5.) In this manner, Plaintiff contends he exhausted his administrative remedies when the New Jersey Department of Corrections ("NJDOC") failed to provide a response to his remedy form[1] within 45 days. (*Id.*)

Plaintiff contests this Court's finding that he fabricated a copy of a remedy form, which he allegedly submitted by hand to a unit officer at Southern State Correctional Facility ("SSCF") on November 30, 2017. (Dkt. No. 88 at 5). At the bench trial on

---

[1] The official title of the form is "New Jersey Department of Corrections Inmate Inquiry form" which this Court will refer to as "remedy form." See New Jersey Administrative Code ("NJAC") § 10A:1-4.5(a).

2

exhaustion of administrative remedies, Defendants argued Plaintiff fabricated the remedy form after the exhaustion issue was raised at Plaintiff's deposition. Plaintiff asserted he had mailed his copy of the remedy form to his counsel before his deposition, but his counsel was unable to confirm that he had received it. Plaintiff has now produced a letter from his counsel, Michael Poreda, Esq., dated May 28, 2021, acknowledging that he received Plaintiff's "pink grievance form," the copy of the remedy form Plaintiff had allegedly kept when he submitted the original to a unit officer at SSCF. (ECF No. 88 at 8).

Plaintiff also submitted copies of five mailing receipts from NJDOC, indicating that Plaintiff sent legal mail to Attorney General Christopher Porrino on December 20, 2017, and to NJDOC Commissioner Gary M. Lanigan on February 23, 2018 and May 11, 2018. (Dkt. No. 88 at 9, 10.) At the bench trial, Petitioner testified that he wrote letters to the Attorney General and NJDOC Commissioner, which supported his claim of exhaustion, but he was unable to obtain copies.

On May 8, 2023, Plaintiff submitted documents he received in response to his OPRA request to the NJDOC. One of the documents is a copy of a letter, dated January 10, 2018, from Plaintiff to NJDOC Commissioner Gary M. Lanigan, marked received on January 22, 2018, and bearing a NJDOC Inmate Tracking System Control Number. (Dkt. No. 90-1 at 1.) Plaintiff alleged his due process rights were violated at Bayside State Prison by Hearing Officer Ms. Ralph, when she found that Plaintiff

3

committed prison infractions alleged in an incident report on November 29, 2017. Plaintiff further stated,

> I don't deny any assaults happened with myself and other "officers" or S.C.O. J. Robinson. This was due to "his" own actions and hostile actions made solely against me. … Well, all I'm asking for here is another "hearing" and or even to being given an <u>investigation</u> into this "incident" by Internal Affairs for reasons it was a "deliberate-assault" intended by J. Robinson and S.C.O. West.

(ECF No. 90-1 at 3.) Plaintiff continued, "I do want to "file" <u>legal</u> "charges" against these "officers" and "S.C.O. J. Robinson" at Bayside State Prison. They've "used", "excessive force and brutality against me" in their "vicious-assault" upon my person, wholly." (*Id.*) The excessive force claims are the subject of Plaintiff's civil rights complaint.

Plaintiff also submitted a copy of a letter he wrote to Commissioner Lanigan on February 21, 2018. (ECF No. 90-1 at 4.) The letter is marked received on April 3, 2018, and it bears a NJDOC Inmate Tracking System Control Number. On the top of the letter, it states "See, Attached … Inquiry/Remedy:" The Inquiry/Remedy is not attached, and Plaintiff questions the efforts of the Chief Custodian of OPRA and his staff in locating the attachment to the letter. (ECF No. 90 at 1-2). In the letter to Commissioner Lanigan, Plaintiff complained that he had not received any resolution on the issues he raised in his January 10, 2018 letter. (*Id.* at 4.) Plaintiff was also seeking information about his promotion within levels of "Ad-Seg.," which presumably was related to the 365 days in administrative segregation imposed as a

4

sanction on Plaintiff for the prison disciplinary infraction for assault on Officer J. Robinson, which Plaintiff was contesting.[2]

The following paragraph in the letter sheds some light on the missing Inquiry/Remedy attachment.

> In fact, I am still not given "paralegal assistance" to filing of an appeal of these sanctions imposed by Bayside State Prison's administrative-officials. I require assistance of the "paralegal" to <u>file</u> to the Appellate Division/Superior Court. Because, I am being "ostracized" by the administration, and directives given to "paralegals" to not "help" me to "file" itself. This is "Continuance of Retaliatory Conduct" . . by the Department of Corrections, or even, "abuse of authority" itself though and malicious, and wantonly, and wrongfully done to me." Please, do intervene and help to resolve.

(ECF No. 90-4 at 4.)

Plaintiff subsequently submitted a supplemental letter brief to this Court. (Dkt. No. 91.) For his motion for reconsideration, Plaintiff relies on *Lamb v. Kendrick*, 52 F.4th 286, 296 (6th Cir. 2022), where the Sixth Circuit Court of Appeals held, in relevant part:

> Thus, given that Lamb submitted his affidavit at the summary judgment stage, his uncorroborated affidavit is sufficient to create a genuine issue of material fact regarding whether he filed a second amended complaint that complied with step one.

---

[2] See Bench Trial Defendants' Exhibit D16, Progress Notes Report, 11/29/2017.

(ECF No. 91 at 3.)  Plaintiff concludes that because he testified to submitting an administrative remedy form that was never processed, he has presented evidence of PLRA exhaustion.  (*Id.*)

Finally, on May 23, 2023, Plaintiff submitted two affidavits from inmate David Wilson, who allegedly witnessed the assault on Plaintiff at Bayside Prison on November 29, 2017.  (Dkt. No. 92.)  Plaintiff was unable to locate Mr. Wilson to obtain these materials sooner.  (*Id.* at 1-2.)

In an affidavit dated November 28, 2018, David Wilson stated that he witnessed an assault on Plaintiff on November 29, 2017, and the assault was initiated by Officer J. Robinson, joined by Officer West and other officers after they subdued Plaintiff.  (Dkt. No. 92 at 3.)  The second affidavit of David Wilson is also dated November 28, 2018.  (Dkt. No. 92 at 4.)  In this affidavit, Mr. Wilson stated he was never interviewed by S.I.D. or other officials at Bayside State Prison about the "Code 33" alert of an "assault" with "officers" on November 29, 2017.  (*Id.*)  Mr. Wilson stated he was interviewed about an inmate who was housed in the same cell [presumably with Plaintiff].  (*Id.*)  Mr. Wilson claims the "alleged" recording of his interview about Plaintiff was "dubbed" or "manipulated" by S.I.D. or prison officials, and is fraudulent.  (Dkt. No. 92 at 4.)

Mr. Wilson's affidavits do not speak to Plaintiff's exhaustion of administrative remedies.  He does not mention Plaintiff's submission of a remedy form.  The fact of an investigation does not establish that Plaintiff submitted a remedy form his excessive

6

claim. An investigation of the November 29, 2017 incident would arise out of the prison disciplinary charge of assault lodged by Officer Robinson against Plaintiff the same day. NJAC § 10A:4-9.5 ("An investigation of the infraction shall be conducted by designated staff of the correctional facility within 48 hours of the time the disciplinary report is served upon the inmate.") *See also* NJAC § 10A:4–11.4 ("Investigation of Appeal.")

## II. STANDARD OF REVIEW

"The purpose of a motion for reconsideration" under Federal Rule of Civil Procedure 59(e), "is to correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)). Therefore, to alter a court's judgment, the party seeking consideration must show

> at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *See North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir.1995).

*Id.* at 677 (3d Cir. 1999).

Plaintiff offers newly obtained evidence in support of his claim that he exhausted administrative remedies on his claim of excessive force by Officer J. Robinson and others at Bayside State Prison on November 29, 2017. (Compl., Dkt.

7

No. 1.) Plaintiff was required by 42 U.S.C. § 1997e(a) to exhaust administrative remedies prior to filing his original complaint on October 3, 2018, received by the Court on October 9, 2018. (*Id.*)

### III. DISCUSSION

#### A. Exhaustion of the NJDOC Administrative Remedy Procedure

After a bench trial on the sole issue of PLRA exhaustion, this Court found Plaintiff not credible in his testimony that he submitted an inmate remedy form to a unit officer at SSCF on November 30, 2017, and never received a response. The Sixth Circuit's decision in *Lamb, supra,* is not relevant because this Court held a bench trial and made factual findings on the exhaustion issue before granting Defendants' motion for summary judgment. "[J]udges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury." *Small v. Camden Cnty.*, 728 F.3d 265, 271 (3d Cir. 2013). The holding in *Lamb* applies where a Court grants a summary judgment motion without holding a trial on PLRA exhaustion. Therefore, the Court turns to whether Plaintiff's newly produced evidence warrants reconsideration of the factual determination that Plaintiff did not submit an administrative remedy form concerning the excessive force claim alleged in his complaint.

Testimony at the bench trial (Transcript, Dkt No. 89) showed that prisoners in the NJDOC exhaust their administrative remedies, when the JPAY computerized system is unavailable to them (for example, when they are in administrative

8

segregation) first, by submitting the white and yellow carbon copies of a handwritten inmate remedy form, maintaining the pink copy of the form for themselves. Typically, these forms are gathered daily from prisoners in administrative segregation by a social worker. Plaintiff testified that a social worker did not visit him, so he gave the white and yellow copies to a unit officer at SSCF on November 30, 2017. The remedy procedure calls for prison staff to scan the paper copy into the JPAY system, which creates a reference number and a printout for the remedy form. An inmate would know if the remedy form was received by checking for a record of the remedy form in the JPAY kiosk. The appropriate prison staff have fifteen calendar days to respond to an "Inmate Inquiry Form" [the form allegedly used by Plaintiff] pursuant to New Jersey Administrative Code ("NJAC") § 10A:1-4.5  (Bench Trial Defendants' Ex. D14 at 10.)  When an inmate receives a response to the Inmate Inquiry Form, the final level of the administrative remedy program is to file an administrative appeal to the prison's administrator. NJAC § 10A:1-4-6. The administrator's response to the administrative appeal, due within ten business days of receipt, is the final NJDOC decision. *Id.*

When the remedy form is answered by the appropriate staff, staff's response appears in JPAY, and the inmate would receive the response from staff on the yellow copy of the carbon form. If Plaintiff submitted a remedy form in SSCF, and it was entered into JPAY as required, staff at Northern State Prison ("NSP") would have access to the remedy form through JPAY, as it is a NJDOC-wide program. There

9

was no record of Plaintiff's remedy form in JPAY. At the bench trial, the Court received Defendants' Ex. D13 and Plaintiff's Ex. P1 (*see also* Dkt. No. 70-1 at 4), copies of Plaintiff's pink copy of the remedy form that he allegedly submitted to a unit officer at SSCF on November 30, 2017, but mistakenly dated November 31, 2017. Plaintiff's NJDOC Inmate Management Progress Notes Report shows that on December 1, 2017, at NSP, Hearing Officer Christy Ralph found Plaintiff guilty and imposed sanctions, including 365 days in administrative segregation for violating Code 002, "ASSAULT ANY PERSON" which was reported by Officer J. Robinson on November 29, 2017. (Bench Trial Defendants' Ex. D16.) According to the Progress Notes Report, the decision was upheld on appeal by Alycia Lewis on December 4, 2017. (*Id.*)

When a prisoner within the NJDOC challenges sanctions imposed by a hearing officer for prison infractions, the administrative remedy procedure is different from ordinary prisoner complaints. The inmate must appeal directly to the prison's administrator, using a special form, without first submitting a remedy form or grievance to staff. NJAC § 10A:4-11.2

### B. ANALYSIS

Plaintiff's newly submitted evidence is not persuasive. At the bench trial, defense counsel asked Plaintiff whether he fabricated his pink copy of the remedy form after learning of the exhaustion requirement at his deposition. (Dkt. No. 89 at 66-67.) Plaintiff denied this. (*Id.*) Plaintiff has established that he sent the pink copy of his

10

remedy form to his attorney before his deposition was taken in this matter on May 27, 2021.[3] The new evidence does not establish Plaintiff submitted his remedy form by handing it to a unit officer at SSCF on November 30, 2017. Next, the Court turns to Plaintiff's letters to Commissioner Lanigan, and the mail receipts for letters to Attorney General Porrino.

Writing letters to the Attorney General and NJDOC Commissioner are not part of the NJDOC administrative remedy program, which is completed by appealing to the prison's administrator after receiving an unsatisfactory response to an Inmate Inquiry Form or Inmate Grievance Form. NJAC § 10A:1-4.1 *et seq*. ("Inmate Remedy System.") Furthermore, the content of the newly submitted letters does not support Plaintiff's claim of exhaustion. Plaintiff's January 2018 letter to Commissioner Lanigan raises a challenge to the sanctions imposed on him after a hearing officer credited Officer J. Robinson's report that Plaintiff assaulted corrections officers on November 29, 2017. While Plaintiff accuses the officers of using excessive force on him, Plaintiff seeks to file criminal charges against the officers without mentioning a civil rights action or describing any difficulty with exhausting administrative remedies on his excessive force claim. His letter is focused on his prison disciplinary proceeding, a claim that falls under a different NJDOC administrative remedy procedure.

---

3 The Court notes Defendants first raised the issue of PLRA exhaustion as an affirmative defense in their answer filed on September 3, 2019.

An inmate remedy form is referenced in Plaintiff's February 2018 letter to Commissioner Lanigan. The letter indicates that an inmate remedy form is attached, although Plaintiff notes the attachment was not produced to him in response to his OPRA request. In the letter to Commissioner Lanigan, Plaintiff states,

> [w]hereas, I am only given a "vague" notice of remaining on Level-I status for another "60 days" more; and without any "negative progress reports", itself. I am not given a Memo, to indicate, an "addendum" to the Policy on Ag-Seg Standards relative to Levels Duration per Level-1 or Level-2 for any inmates to become considered. As to be promoted to "Level-2" numbers of "days" required.

(Dkt. No. 90-1 at 4.) Defendants' Exhibit D7, submitted at the bench trial, is an inmate remedy form submitted by Plaintiff to NSP staff on February 1, 2018, with the subject line: "Level-I for 60 days and without any negative progress reports." On this remedy form, Plaintiff wrote "[t]here's not any "note" for "denying" Level-I status." (*Id.*) The remedy form attached to Plaintiff's February 2018 letter to Commissioner Lanigan was clearly the same remedy form in Defendants' Exhibit D7.

In the February 2018 letter to Commissioner Lanigan, Plaintiff also seeks help appealing the hearing officer's sanctions, alleging the inmate paralegals have been instructed not to assist him. (Dkt. No. 90-1 at 4.) As discussed above, the administrative remedy procedure for challenging a hearing officer's decision on charges of a prison infraction are different than the procedure for exhausting a complaint of excessive force by corrections officers. Plaintiff was not seeking help exhausting administrative remedies for his civil rights complaint.

12

The Court remains convinced that Plaintiff's acknowledged, long-term familiarity with the NJDOC administrative remedy program, and his cloudy memory regarding the exhaustion issue, calls into doubt the credibility of his testimony that he submitted an inmate remedy form to a unit officer at SSCF on November 30, 2017. Plaintiff's pink copy of the remedy form bears no indication that it was received or processed, and the form was readily available for Plaintiff to complete after the fact. It is not plausible, given the efforts Plaintiff made to challenge the prison disciplinary finding, that he took no action to determine whether his remedy form for his excessive force claim had been processed, particularly in light of the fact that Plaintiff was transferred from SSCF to NSP on December 1, 2017. The Court finds it far more likely that Plaintiff's immediate concern, at that time, was to challenge the prison disciplinary finding that he assaulted Officer Robinson and other officers, an infraction for which he received a sanction of 365 days in administrative segregation. The prison disciplinary hearing is the issue Plaintiff raised in his letters to Commissioner Lanigan.

The PLRA requires proper exhaustion, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006), (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original)). It bears repeating that the procedures for exhausting challenges to a hearing officer's finding are different from

13

the procedures for exhausting a civil rights excessive force claim.   *Cf.* NJAC § 10A:1-41. *et seq.* with NJAC § 10A:4-11.1 *et seq.*

## IV.  CONCLUSION

For these reasons, this Court denies Plaintiff's motion for reconsideration. An appropriate Order follows.

**Date:  July 21, 2023**

s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**United States District Judge**
